IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


JEFFREY JAMES FOX,                    :
                                      :
      Plaintiff,                      :
                                      :
vs.                                   :    CIVIL ACTION 15-0434-M
                                      :
CAROLYN W. COLVIN,                    :
Commissioner of Social Security,      :
                                      :
      Defendant.                      :


MEMORANDUM OPINION AND ORDER


        In this action under 42 U.S.C. § 405(g), Plaintiff seeks

judicial review of an adverse social security ruling which

denied a claim for disability insurance benefits.  The parties

filed written consent and this action has been referred to the

undersigned Magistrate Judge to conduct all proceedings and

order judgment in accordance with 28 U.S.C. § 636(c),

Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 26).

Oral argument was waived in this action (Doc. 25).  After

considering the administrative record and the memoranda of the

parties, it is **ORDERED** that the decision of the Commissioner be

**AFFIRMED** and that this action be **DISMISSED**.

        This Court is not free to reweigh the evidence or

1

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Fox was fifty-one years old, had completed a high school education (*see* Tr. 30), and had previous work experience as a truck driver (Tr. 52). In claiming benefits, Plaintiff alleges disability due to upper and lower extremity impairments in combination with obesity (Doc. 15 Fact Sheet).

Fox filed an application for disability benefits on January 28, 2013, asserting a disability onset date of March 4, 2011 (Tr. 134-35; *see also* Tr. 20). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not do his past relevant work, Plaintiff was capable of performing specific light work jobs (Tr. 20-32). Fox

2

requested review of the hearing decision (Tr. 14-16) by the
Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not
supported by substantial evidence.  Specifically, Fox alleges
that:  (1) The ALJ did not properly consider the opinions of his
treating physician; and (2) the ALJ did not properly apply the
Medical Vocational Rules (Doc. 15).  Defendant has responded to—
and denies—these claims (Doc. 20).

The Court will now summarize the relevant record evidence.

On March 4, 2011, Fox was admitted to UAB Hospital
(Highlands) for four nights to undergo laparoscopic incisional
repair of multiple hernias; he improved to a point where his
pain was well-controlled and he was stable at discharge with a
prescription for Lortab[1] (Tr. 220-26, 228-29).

On January 9, 2013, Dr. Lisha Thornton examined Plaintiff
for his diabetes mellitus, hypertension, and dyslipidemia; he
also had eye strain, headaches, and foot pain from neuropathy,
especially at night (Tr. 230-34).  The Doctor noted that Fox's
diabetes,[2] hypertension, and asthma were resolved; his gait was

---

[1]*Lortab* is a semisynthetic narcotic analgesic used for "the
relief of moderate to moderately severe pain." *Physician's Desk
Reference* 2926-27 (52nd ed. 1998).

[2]During the same examination, the Doctor indicated that Fox's
diabetes mellitus was uncontrolled (Tr. 234; *cf.* Tr. 231).

normal.  Thornton encouraged Plaintiff to get his eyes examined and quit smoking while increasing his Neurontin[3] prescription.

On January 9, 2013, records from UAB Health Center Hoover demonstrated that Fox's diabetes was under better control (Tr. 272; *see generally* Tr. 235-77).  Plaintiff was given information on how to quit smoking (Tr. 238-40).

On March 30, at the request of the Social Security Administration, Dr. Richard Crittenden performed a consultative examination of Fox whose chief complaints were neuropathic feet pain, bilateral shoulder pain, and right knee pain; Plaintiff said that the neuropathy limited him to standing and walking for one hour each and the shoulder kept him from overhead reaching, though it had no effect on hand function (Tr. 278-83).  Fox stated that his daily activities included cooking, cleaning dishes, vacuuming, and doing laundry; he drove himself to church and to the grocery store.  He walked as much as he could everyday.  Crittenden described Plaintiff as morbidly obese with normal toe/heel walk; though the Doctor found that he did not need a cane, Fox had one, unprescribed, that he used occasionally.  Plaintiff had minor range of motion (hereinafter *ROM*) limitations in the right shoulder; muscle strength was 5/5

---

[3]*Neurontin* is used in the treatment of partial seizures.

4

in all major muscle groups with normal muscle bulk and tone. Sensation to touch was intact, though there was no pinprick sensation in any of the ten toes.  Dr. Crittenden noted that Fox's right shoulder was moderately tender posteriorly and laterally below the acromion; the right knee was diffusely mildly tender with mild crepitus on active ROM.  The Examiner found that Plaintiff could stand and walk, up to six hours each, with no limitation in sitting; Fox was limited to lifting and carrying twenty-five pounds occasionally and ten pounds frequently on the right with no limitations on the left.  He could reach only occasionally, with no limitation in handling, fingering, and feeling.  There was no restriction on climbing stairs but he was limited in climbing ladders and scaffolding; there were no limitations in stooping, crouching, kneeling, or crawling.

On April 25, 2013, Dr. Lisha Thornton examined Plaintiff for chest congestion, sinus pressure, headache, and right shoulder pain (Tr. 295-300).  She noted his height of seventy-six inches and weight of 342.4 pounds equaled a Body Mass Index of 41.68; Fox was in no acute distress.  Plaintiff had normal gait; his right shoulder had mild crepitus with moderately

---

*Physician's Desk Reference* 2110-13 (52nd ed. 1998).

reduced ROM while the left shoulder had mild crepitus with good ROM.  Thornton prescribed Ultram,[4] referred him to an orthopaedic physician, and told him to quit smoking.  On July 11, 2013, Thornton examined Fox for his annual physical; he was doing well overall, smoking, and watching portions at meals, but not exercising (Tr. 301-06).  Plaintiff was alert and oriented and in no acute distress; on the musculoskeletal exam, the Doctor noted no tenderness, swelling, or deformity, though there was crepitus and reduced ROM in the right shoulder.  He had normal motor function.  Plaintiff was encouraged to get regular exercise and change his diet to combat his obesity as well as to quit smoking.

On July 16, Dr. Marshall Crowther examined Plaintiff for right shoulder pain; Fox also complained of neck and right knee pain, but no back pain (Tr. 285-88).  X-rays showed mild degenerative change in the glenohumeral and acromioclavicular joints, but the changes were not considered significant.  The Doctor noted that internal rotation was limited secondary to pain; Plaintiff was given a corticosteroid injection and was prescribed a topical pain compound.

---

[4]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

6

On July 24, 2013, Dr. Thornton saw Fox for shoulder and right knee pain; he also complained of burning and numbness in his feet; he rated his pain at two (Tr. 311-15).  She prescribed Tramadol.[5]  The Doctor next examined Plaintiff on February 7, 2014 for complaints of intermittent left ear pain, hemorrhoids, and increased neuropathic feet pain; he did not complain of any muscular pain, but rated his pain at seven (Tr. 316-21).  Fox had normal gait; Thornton referred him for a colonoscopy.

On March 6, Dr. Carol Rosenstiel determined that Fox's vision was 20/20 bilaterally (Tr. 291; *see generally* Tr. 290-93).

On March 11, Dr. Thornton saw Plaintiff for increased sugar levels; he complained that Lyrica[6] was not controlling his neuropathic pain (Tr. 322-27).  She increased the dosage for the Lyrica and his diabetic medications and encouraged him to lose weight and exercise.

On March 13, Dr. Crowther examined Plaintiff for follow up for his right shoulder pain and a new complaint of right knee pain when he tried to straighten it; his pain was seven on a

---

[5]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." *Physician's Desk Reference* 2520 (66th ed. 2012).

[6]*Lyrica* is used for the management of neuropathic pain.

ten-point scale (Tr. 344-48, 367).  The Doctor noted no ROM
limitations in the right shoulder but about fifteen degrees
limitations in his right knee extension; gait was normal.  X-
rays demonstrated fairly advanced degenerative narrowing and
osteophytic change, mostly affecting patellofemoral compartment,
but tricompartmental changes were seen.  Crowther's diagnosis
was degenerative joint disease of the right knee and rotator
cuff impingement syndrome of the right shoulder for which he
recommended injections for both the knee and shoulder, a
compounding pain cream, a lateral hinged patellar J brace for
knee stability, and physical therapy; he could bear weight as he
was able and was told to avoid stairs.

On April 2, 2014, Dr. Thornton noted Fox's complaints of
fatigue and drowsiness because of his medications; he rated his
pain at eight (Tr. 361-66).  The Doctor noted that his glucose
levels were improving.  Plaintiff's right shoulder had poor ROM
with crepitus; his right knee had reduced ROM with crepitus.  On
the same date, Thornton completed a physical capacities
evaluation in which she indicated that Fox could lift and carry
twenty pounds occasionally and ten pounds frequently; he could
sit for three and stand/walk less than one hour during an eight-

---

*Physician's Desk Reference* 2517 (62nd ed. 2008).

hour day (Tr. 336).  Dr. Thornton indicated that Fox needed a cane to walk.  She went on to state that Plaintiff could frequently engage in gross and fine manipulation, operate motor vehicles, work around dust, allergens, and fumes; he could occasionally climb stairs or ladders and balance and bend, but could never use arm or leg controls, stoop, reach, or work around hazardous machinery.  The Doctor went on to complete forms indicating that Fox experienced pain and fatigue/weakness to an extent that would negatively affect adequate performance of daily activities, that physical activity would greatly increase his pain/fatigue/weakness, and that prescribed medication would cause side effects that would limit his effectiveness (Tr. 337-40).

This concludes the Court's review of the evidence.

In bringing this action, Fox first claims that the ALJ did not properly consider the opinions of his treating physician, Dr. Lisha Thornton (Doc. 15, pp. 3-8).  The Court notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."

*Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[7] *see also* 20 C.F.R. § 404.1527 (2015).

Fox asserts that the ALJ improperly gave greater weight to the conclusions of another doctor than to Thompson.  More specifically, he asserts that the ALJ failed to recognize that Dr. Thornton was considering all of his impairments, severe and non-severe, in assessing his abilities as opposed to Dr. Crowther whose evaluation was focused on orthopaedic impairments.  Plaintiff's argument emphasizes his obesity and right knee impairment as reasons why Thornton's physical capacities and pain evaluations were entitled to greater weight.

In rejecting the treating physician's opinion, the ALJ first noted the lack of support for those conclusions in her own records, specifically pointing out Fox's admission that he could engage in particular daily activities inconsistent with her conclusions (Tr. 29).  The ALJ further pointed out that Thornton's records failed to indicate a need for a cane, though her physical capacities evaluation proclaimed it necessary (Tr. 29); just a month before that conclusion, Thornton had found Plaintiff to have a normal gait (Tr. 325).  The ALJ also

---

[7]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

discredited Thornton's finding that Fox's medications caused side effects that would reduce workplace effectiveness, noting no support in her records for the conclusion (Tr. 29).[8]  In bringing this claim, Plaintiff fails to rebut these specific reasons for the ALJ's rejection of Thornton's conclusions.

Plaintiff points to Dr. Crittendon's examination as support for Thornton's disability conclusion (Doc. 15, p. 7; *cf*. Tr. 278-83).  This relates specifically to Fox's right knee impairment.  However, the ALJ rejected the severity of that impairment as the medical evidence did not support the durational requirement (Tr. 22).  In addressing the issue, the ALJ specifically discussed Crittendon's examination findings and his specific conclusion that there was no objective evidence to support Plaintiff's claim of right knee pain (Tr. 22-23; *cf*. Tr. 282).  The Court finds no support for Fox's argument that Crittendon's notes bolster Dr. Thornton's conclusions.

As for Plaintiff's argument regarding his obesity, the Court notes that the ALJ specifically addressed the impairment, first finding it severe (Tr. 22).  The ALJ went on to point out the evaluation required for obesity, before finding that no

---

[8]The Court notes that Fox complained once about the effects of his medications, though it was the last time Thornton examined him (Tr. 361).  Nevertheless, Fox has not complained of this error and the

11

"treating or examining source of record has attributed any additional limitations to the claimant's obesity" (Tr. 24, 28). The Court cannot say that the ALJ failed to properly consider Fox's obesity in rejecting Dr. Thornton's conclusions of disability.

Finally, with regard to this claim, the Court notes the following language in Plaintiff's brief:  "Regardless of the longevity of treatment or the content of the treating notes" (Tr. 15, p. 8).  Fox's claim regarding her treating physician fails exactly because of the "content of the treating notes" as Thornton's medical records do not support a conclusion of disability.  The balance of the medical record does not support disability either.  It is of no benefit to him that Plaintiff's treating physician was in the best position to "assess the nature, extent and severity of her patient's impairments and their effects on everyday and workplace activities" if she failed to actually record the information as it occurred (*see* Doc. 15, p. 8).

Fox's second claim is that the ALJ did not properly apply the Medical Vocational Rules (hereinafter *MVR*) (Doc. 15, pp. 8-10).  More specifically, Plaintiff argues that if the ALJ had

Court considers it to be, at most, harmless.

applied the MVR, he would have gridded out under Rule 201.14 and been found disabled.

The Court finds that Fox's premise is faulty, however, in that Rule 201.14 contemplates an individual capable of performing sedentary work.  The ALJ specifically found that Plaintiff had the residual functional capacity to perform light work (Tr. 25).  His questioning of the Vocational Expert contemplated an individual capable of performing light work (Tr. 52) and the answers received specifically identified the jobs as light (Tr. 52-53).  The ALJ accepted the Vocational Expert's answers as his own conclusions and found that Fox was capable of performing specific light work jobs (Tr. 31).  Plaintiff's claim herein is irrelevant to the findings.[9]

Fox has raised two claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED.** Judgment will be

---

[9]The Court further finds that Plaintiff's assertion (*see* Doc. 15, p. 10) that the ALJ should have developed the record by calling a medical expert to reconcile differences in the record is of no merit

entered by separate Order.

DONE this 21st day of April, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

---

in light of the failure of the evidence to support disability.